**STATE OF VERMONT**
**SUPERIOR COURT - ENVIRONMENTAL DIVISION**

| | | |
|---|---|---|
| In re Frantz Wastewater & | } | Docket No. 173-10-10 Vtec |
| Water Supply Permit | } | |
| | } | |

### Decision on the Merits

Randolph and Page Frantz (Applicants) own Lots 1-5 in a seven-lot subdivision in the Town of Charlotte, Vermont (the Town). Gregg and Elizabeth Beldock (Appellants), the original subdividers, own Lots 6 and 7. In 2010, Applicants sought a wastewater and water supply permit from the Town of Charlotte Sewage Control Officer (the Town Officer), under authority delegated to the Town by the Vermont Agency of Natural Resources, to replace a failed wastewater disposal system serving their residence on Lot 2. The replacement system was to be installed on Lot 6. The Town Officer granted Wastewater System and Potable Water Supply Permit number WW-138-1018 (the Wastewater Permit) to Applicants, after concluding that Applicants' proposed wastewater disposal system complies with the Wastewater System and Potable Water Supply Rules (the Rules) of the Environmental Protection Rules. Applicants subsequently had the replacement system installed, and Appellants then appealed the grant of the Wastewater Permit to this Court.

The legal issue presented in this appeal regards compliance of Applicant's replacement wastewater disposal system with the Rules; specifically, whether a document establishing permanent legal access for the replacement wastewater disposal system benefitting Applicants' Lot 2, which is installed on Appellants' Lot 6, has been recorded and indexed in the land records of the Town as required by Section 1-309(b) of the Rules. No other aspect of the replacement system's compliance with the Rules is challenged in this appeal.

### Procedural History

As part of this appeal, Appellants filed a Statement of Questions (SOQ). After a January 14, 2011 Court Order directed Appellants to revise their original SOQ, Appellants filed a Second Amended SOQ on February 22, 2011. Question 1 of the amended SOQ asks, "Do the applicants [sic] have a legal easement for the construction of a replacement wastewater disposal system on Appellants' property, in the location where that system was installed, as required by the Environmental Protection Rules?" (Appellants' Second Amended Statement of Questions 1, filed Feb. 22, 2011.)

1

On August 1, 2011, Applicants filed a motion to dismiss Question 1, contending that this Court does not have jurisdiction to determine the legality of the easement. In a January 19, 2012 Entry Order, the Court ordered that with regard to Question 1, trial will be limited to whether Applicants have complied with the Rules. We further noted that any arguments involving property rights are beyond this Court's jurisdiction and will not be considered.

Thereafter, on March 12, 2012, Appellants filed their Third Amended SOQ containing three Questions. At the start of the April 3, 2012 trial, Appellants withdrew Questions 2 and 3 from their Third Amended SOQ. Thus, Question 1 of the Third Amended SOQ, which is identical to Question 1 from the Second Amended SOQ, is the only Question remaining before this Court.

Appearing at the April 3, 2012 trial were Randolph and Page Frantz, represented by Thomas F. Heilmann., Esq., and Gregg H. Beldock, represented by Allison J. Bell, Esq. At the direction of the parties, the Court did not conduct a site visit at any time during this matter.

Based upon the evidence presented at trial, the Court renders the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

This Decision is limited to the facts presented in this appeal. The following factual findings are not binding on the parties in their litigation pending before the Superior Court, Civil Division.

1. The land at issue in this matter is located off of Carpenter Road in the Town of Charlotte, Vermont.

2. Appellants purchased the property in 1996.

3. Appellants were interested in minimizing development of the subject land. For financial reasons, however, some development and sale of lots was necessary. Appellants thus created the Plouffe Farm Subdivision (the Subdivision) consisting of seven lots. Appellants retained two lots and sold five lots to Applicants for potential development.

4. Appellants presently own Lots 6 and 7, with their house being located on Lot 6.

5. Applicants presently own Lots 1, 2, 3, 4, and 5.

6. Appellants retained Frank R. O'Brien, P.E. to design the Subdivision, including the locations for primary and replacement wastewater disposal areas.

7. The Town is a municipality which has received delegated authority from the Vermont Agency of Natural Resources to consider and decide applications for wastewater and water supply permits.

8. On June 9, 1997, Appellants conveyed Lot 2 of the Subdivision to Applicants via Warranty Deed. The Warranty Deed is recorded in the Charlotte Land Records at Volume 94, pages 188–190.

9. The Lot 2 Warranty Deed also conveys the benefit of a wastewater disposal system replacement area located on Lot 6 to serve Lot 2.

10. Also on June 9, 1997, Appellants conveyed Lot 3 to Champlain Financial Group, Inc. This conveyance includes a perpetual right and easement to use a portion of Lot 6 for both primary and replacement sewage disposal systems benefitting Lot 3. The Warranty Deed expressly states that "[s]aid primary and replacement sewage disposal system, if necessary, shall be installed and maintained by Grantees, their successors and assigns, in accordance with said plans." Applicants' Ex. F-1, at 2. The Warranty Deed is recorded in the Charlotte Land Records at Volume 94, pages 196–200.

11. On July 27, 1998, Champlain Financial Group, Inc. conveyed Lot 3 to Applicants. The Warranty Deed expressly states that "[f]urther conveyed herewith are all of the Grantor's right, title and interest in and to the perpetual rights, rights of way and easements as more fully described in Warranty Deed from Gregg H. Beldock and Elizabeth Beldock to Grantor herein dated June 9, 1997, of record in Volume 94, at Pages 196–200 of the Charlotte Land Records." Applicants' Ex. F. This Warranty Deed is recorded at Volume 100, pages 149-152 of the Charlotte Land Records.

12. On October 1, 2010, Applicants, as the owners of Lot 3, entered into a License and Lease Agreement with themselves as the owners of Lot 2 (the Agreement). The Agreement transfers to Lot 2 the use of the easement benefitting Lot 3 for the primary and replacement wastewater disposal area located on Lot 6. The Agreement is recorded in the Charlotte Land Records at Volume 199, pages 37–38.

13. For reasons unknown to the Court and immaterial here, Applicants constructed their primary wastewater disposal system for Lot 2 in the area on Lot 6 designated for the Lot 2 replacement system.

14.     Due to the failure of Lot 2's primary wastewater disposal system, Applicants retained Trafton M. Crandall, P.E. to design and assist with the permitting and certification of a replacement wastewater disposal system.

15.     On or about September 9, 2010, Mr. Crandall completed and filed with the Town a wastewater permit application for the replacement system benefitting Lot 2. The replacement wastewater disposal system was designed and located within the area originally designated for the benefit of Lot 3.

16.     On October 13, 2010, the Town issued the Wastewater Permit approving the replacement system for Lot 2. Condition number 18 of the Wastewater Permit states, in pertinent part:

> The wastewater disposal system for Lot #2 is subject to an easement onto the lands identified as Lot #6. A copy of the executed easement shall be recorded and indexed in the town land records.

Applicants' Ex. I, ¶ 18.

17.     By a March 27, 2012 Quitclaim Deed, Applicants conveyed from themselves, as owners of Lot 3, to themselves, as owners of Lot 2, the perpetual right and easement to use a portion of Lot 6 for primary and replacement sewage disposal on Lot 2. The Quitclaim Deed is recorded in the Charlotte Land Records at Volume 199, pages 36–37.

18.     Currently pending before this Court is Appellants' appeal of the approval of the Wastewater Permit. A companion case addressing the legality of the documents discussed above is currently pending in Superior Court, Civil Division, Chittenden Unit.

### Conclusions of Law

In cases where there are questions regarding compliance with environmental regulations and also disputes over real property rights, this Court must ensure compliance with the applicable regulations but may not adjudicate private property rights. See In re Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.). Because we have no intention of venturing beyond our limited jurisdiction into an adjudication of private property rights, we leave that dispute to the Superior Court and turn to whether Applicants have provided sufficient evidence of compliance with the Rules.

Before a valid wastewater permit can be issued for a wastewater disposal system that will be located "off the lot," Section 1-309(b) of the Rules requires that a "document establishing permanent legal access [be] recorded and indexed in the land records of the municipality where

the project is located." Envtl. Protection Rules, Chp. 1, Wastewater System & Potable Water Supply Rules, § 1-309(b) (Sept. 29, 2007). Here, the Wastewater Permit authorizes Applicants to install a replacement wastewater disposal system on Lot 6 for the benefit of Lot 2. Thus, we look to see if there is a document establishing permanent access upon Lot 6 for the benefit of Lot 2 and whether that document is recorded and indexed in the Town's Land Records.

We conclude that Applicants have made a threshold showing of compliance with the Rules. In other words, pursuant to Section 1-309(b), Applicants have provided sufficient evidence of documents, recorded and indexed in the Town's land records, establishing permanent legal access to install a replacement wastewater disposal system upon Lot 6 for the benefit of Lot 2. That evidence includes:

1. The June 9, 1997 Warranty Deed, recorded at Volume 94, pages 196-200 of the Charlotte Land Records, which conveys Lot 3 of the Subdivision from Appellants to Champlain Financial Group, Inc. That deed includes a perpetual right and easement to use a portion of Lot 6 for both primary and replacement sewage disposal systems benefitting Lot 3. The Warranty Deed expressly states that "[s]aid primary and replacement sewage disposal system, if necessary, shall be installed and maintained by Grantees, their successors and assigns, in accordance with said plans." Applicants' Ex. F-1, at 2.

2. The July 27, 1998 Warranty Deed, recorded at Volume 100, Pages 149-152 of the Charlotte Land Records, which conveys Lot 3 of the Subdivision from Champlain Financial Group, Inc. to Applicants. The Warranty Deed expressly states that "[f]urther conveyed herewith are all of the Grantor's right, title and interest in and to the perpetual rights, rights of way and easements as more fully described in Warranty Deed from Gregg H. Beldock and Elizabeth Beldock to Grantor herein dated June 9, 1997, of record in Volume 94, at Pages 196 – 200." Applicants' Ex. F.

3. The October 1, 2010 License and Lease Agreement, recorded in the Charlotte Land Records at Volume 199, Pages 37–38, by and between Applicants, owners of both Lots 2 and 3, which transfers to Lot 2 the use of the easement benefitting Lot 3 for the primary and replacement wastewater disposal area located on Lot 6.

4. The March 27, 2012 Quitclaim Deed, recorded at Volume 199, Pages 36-37 of the Charlotte Land Records, which conveys from Applicants to themselves a perpetual

right and easement from Lot 3 to Lot 2 to use a portion of Lot 6 for primary and replacement sewage disposal.

While the legality of the above documents is at issue in the parties' companion case presently pending before the Civil Division, Chittenden Unit, the documents on their face establish a permanent legal access for the replacement wastewater disposal system located on Lot 6 and benefitting Lot 2. By virtue of the License and Lease Agreement and the Quitclaim Deed, Lot 2 is authorized to use the easement area located upon Lot 6, and originally designed to serve Lot 3, for a replacement wastewater disposal system.[1]

### Conclusion

For the reasons discussed above, we conclude that Applicants have provided us with documents establishing permanent legal access upon Lot 6 for the benefit of Lot 2 which are recorded and indexed in the Town's Land Records. Consequently, Applicants have established compliance with Section 1-309(b) of the Rules. As compliance with Section 1-309(b) of the Rules was the sole challenge to the Town Officer's grant of the Wastewater Permit to Applicants, we must conclude that the Wastewater Permit stands.

Our Decision is limited to the facts presented in this appeal. This Decision does not control any issues relating to the legal sufficiency of the above documents or the rights contained therein.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont, this 6th day of July 2012.


_____
Thomas G. Walsh, Environmental Judge

---

[1] The outcome of the matter before the Civil Division, Chittenden Unit may impact Applicants' compliance with the Rules. As for the issue currently within our jurisdiction, however, we conclude that the documents on their face establish Lot 2's permanent legal access to the replacement wastewater disposal area located on Lot 6.